---

(Court of Common Pleas, Cuyahoga Co.)
### BERNARD B. GOODMAN v. ANNA G. MANNING.

1. Where goods are sold on weekly or monthly payments and a chattel mortgage in the usual and ordinary form on such goods is given to the seller, it does not come within the purview of section 4155-2 of the Revised Statutes of Ohio., known as the Conditional Sales' Act.

2. Under the provisions of the chattel mortgage in the case at bar, the mortgagee had the right to take the property and sell it at public or private sale and apply the proceeds to the payment of his claim without first re-paying the mortgagee fifty per cent. or any other portion of the payments made on the goods thus taken and sold.

3. Parol evidence of co-temporaneous agreements is inadmissible for the purpose of contradicting, adding to, or varying the terms of a valid, written instrument, that is, in this case the mortgage.
(Delivered December 10, 1897.)

---

DELLENBAUGH, J.

The facts before the court in substance show that one A. Goodman, the father of the plaintiff in the case at bar, sold the defendant, Anna G. Manning, on sundry dates, various lots of household furniture and furnishings, and that thereafter the defendant secured the purchase money price thereof by executing and delivering to said A. Goodman her several promissory notes secured by chattel mortgages on said personal property. Subsequently said A. Goodman transferred said notes and mortgages to his son, Bernard B. Goodman, the plain-

tiff in this case. The defendant remaining in possession of said personal property for about five years, during which time she paid either the plaintiff or his father about one thousand dollars ($1,000.00). In 1895, the defendant being unable to make her payments in accordance with the terms of said notes and mortgages securing the payment thereof, the plaintiff took possession, with defendant's knowledge, of all of said property, and shortly thereafter caused it to be sold at public auction, and after deducting from the proceeds of such sale the expense of selling the same, applied the balance in payment of said mortgage indebtedness.

Therefore this is an action brought by plaintiff against defendant to recover the balance of said indebtedness still remaining due after crediting thereon the proceeds of said sale.

The defendant claims that both said notes and mortgages disclose that the notes secured thereby were payable in weekly, bi-monthly, or monthly payments, and therefore come squarely within the provisions of the conditional sales act passed May 4, 1895.

Defendant also claims that plaintiff took said property from her without paying back to her one-half of the amount she paid thereon, or any part thereof, in pursuance with the provisions of said sales' act.

On the other hand, plaintiff claims that the mortgages are all in the usual and ordinary form and, therefore, they do not come within the purview of said act.

Now, let us see what the provisions of the mortgages really are. The forms used for all of the mortgages being exactly the same, an examination, therefore, of one of them will disclose the provisions of all. The first thing shown is a sale by the defendant, Anna G. Manning, as mortgagor, to the plaintiff, of the property described in such mortgage, subject, however, to certain conditions contained therein. The defeasance clause provides that if the indebtedness be paid in accordance with the terms thereof, the mortgage and the notes secured thereby, shall be void, and containing an agreement to pay the same accordingly. The following, amongst other provisions, are specifically set forth in said mortgage: "That, whereas the said Anna G. Manning has this day given her note for $361.03, payable respectively in fourteen (14) equal bi-monthly payments after date for value received, with interest, at the office of A. Goodman. That if the grantee shall at any time deem it necessary for his more complete and perfect security, the grantee is authorized and empowered to take and carry away said mortgaged property and sell and dispose of the same at public auction or private sale.

COPYRIGHT. 1898, BY CARL G. JAHN.

It is further agreed that if said goods and chattels shall be sold at public auction, the grantee may bid thereon and become the purchaser of the same, or any part thereof, and out of the money arising therefrom may retain and pay the said indebtedness above mentioned and all charges touching the same, or retain a sufficient amount of money arising from such sale necessary to indemnify the said grantee for any damages sustained by grantee by reason of the violation of the aforesaid covenants on the part of the grantor, rendering the overplus, if any, to the said grantor. Said party of the first part, that is, Anna G. Manning, agrees to keep the goods insured for the full amount of the mortgage until the said mortgage is paid. If said party fail to insure the same, then A. Goodman may insure the said goods and chattels at the expense of party of the first part, and said insurance to be paid to A. Goodman in case of fire or damage by same."

All of said mortgages and notes being signed by the said Anna G. Manning.

Now, is the instrument under consideration within the purview of the conditional sales' act? Manifestly, under the provisions of the mortgage, the mortgagor, the vendee of the property, had an insurable, leviable and attachable interest therein; although under the conditions of the mortgage, the mortgagee had the right to take possession of the property in case of default, or in the event that he, the mortgagee, should for any reason deem his security impaired, and after taking possession of the property, proceed to sell it at either public or private sale, rendering, however, the overplus, if any, after satisfying the mortgage indebtedness, to the mortgageor. In other words, after taking possession of the property under the terms and conditions of the mortgage, the mortgagee stood fairly and squarely in the shoes of a trustee, and, as such trustee, bound to account for the proceeds of the sale of the property thus taken, to the mortgagor, but not becoming, by reason of his taking possession of such property, the absolute owner thereof.

The act to regulate the conditional sales of personal property, passed May 4, 1895, known as secs. 4155-2 and 4155-3 Rev. Stat. of Ohio.

Section 1 of said act is, in substance, as follows: "That in all cases where any personal property shall be sold to any person, to be paid for, in whole or in part, in instalments * * * * the title to the same to remain in the vendor * * * * until such sums * * * * shall have been paid, such condition in regard to the title so remaining until such payment shall be void as to all subsequent purchasers," etc., unless such instrument shall be executed, veri-

fied and filed in accordance with the provisions of this section.

The second section of said act, in substance, provides "Whenever such property is so sold * * * * it shall be unlawful for the vendor * * * * to take possession of said property without tendering or refunding to the purchaser * * * * the sum or sums of money so paid after deducting therefrom a reasonable compensation for the use of such property, which shall, in no case, exceed 50 per cent. of the amount so paid, anything in the contract to the contrary notwithstanding, and whether such condition be expressed in such contract or not, unless such property has been broken or actually damaged, and then a reasonable compensation for such breakage or damage shall be allowed".

The defendant in the case at bar relies upon the case of Caldwell v. The Singer Mfg. Co., 8th Ohio C. C., 460, decided by the Circuit Court of Jefferson county, in 1892. The decision in this case was an oral opinion delivered by Judge Woodbury.

Now let us see what the facts upon which this decision was predicated, really were, and then compare them with the facts in the case at bar.

Judge Woodbury states the facts in his opinion. The learned judge tells us what they really were, at page 463: "This is a contract, in the first instance, by the company, of the sale of this machine to Mrs. Caldwell for $55.00 to be paid in instalments, and after acknowledging the receipt of $5.00 in cash and $10.00 for an old machine, it provides for thirteen and one-third instalment payments of $3.00 each. It then provides for a re-sale of the machine by Mrs. Caldwell to The Singer Mfg. Co. which transfers the title from her to the company, and provides that they may hold it as security and authorizes their agent to take possession of the machine if she fails to perform the conditions of the contract or any of them, and that upon failing to make the payments when they fall due, it may take the machine and hold it for the balance due."

Clearly, therefore, the instrument under consideration by Judge Woodbury provided that the Singer Co. had the right to take possession of the machine at any time after default, as the absolute owner thereof, and, furthermore, it was not bound by the terms of such instrument to account to Mrs. Caldwell for any balance remaining after the payment of the mortgage indebtedness in the event it was sold; in other words, the Singer Co. was not bound by the terms of the instrument to sell the property either at public or private sale, but it had the absolute right to retain the property as the absolute owner thereof.

Now, this is the distinguishing feature between the instrument under consider-

ation by Judge Woodbury in the Caldwell case and the instrument assailed in the case at bar. In this case, under the terms and provisions of the mortgage, the property could not be taken by the mortgagee as the absolute owner, but could only be taken as a trustee bound to account, under the provisions of the mortgage, to the mortgageor for any overplus remaining after the payment of the mortgage indebtedness.

On page 464 Judge Woodbury states why the conditional sales' act was passed and the evils it was designed to wipe out, in these words: "Long prior to the passage of this statute, contracts of this character had been and were being made in every county in the state, by the vendors of sewing-machines, pianos and organs more especially, and of some other kinds of property. Contracts were made in writing, drawn up with substantially the same stipulations as we have here, but not called mortgages, and the contracts were conditional in that they provided that the title should remain in the vendor until the other party should pay for the article.

"Great abuse had been perpetrated by means of these contracts. The supreme court of this state had unfortunately held that that kind of contracts were valid and binding upon the parties, and, therefore, we were unable under the holding of the supreme court of Ohio, to protect purchasers under such circumstances, and under it the vendors of these machines, where they entered into contracts of this kind, were ruining the poor people of the state. For, whenever they could get a party in default on any of the payments of the instalments, whether of $1.00 or more, they took possession of the property and held it as their own, and filched from the people their machines and all they paid on them. The time had come when there was a necessity for the legislature to act, for the supreme court had gone so far as to hold that no matter how small the amount due, the company could gobble up a machine.

"But was the conditional sales' act intended to destroy the entire chattel mortgage system of the state? We think not. Perhaps the legislature may correct many abuses now existing under this system, by subsequent legislation. Judge Woodbury did not think his opinion would affect the chattel mortgage system, because at page 465 he says: "It is said that the effect of this holding will be to impair the validity of chattel mortgages in Ohio. We do not think so."

A decision of the circuit court of Hamilton county in Baker v. Speyer, 12 C. C., 118, is also relied upon by counsel for defendant. The opinion utterly fails to disclose what the terms and conditions of the mortgage under considera-

tion really were, but Judge Smith, who delivered it, says: "This case raises the question whether, when one purchases goods on the instalment plan, and simultaneously executes a mortgage thereon to the seller to secure the deferred payments of the purchase money, and makes substantial payments thereon but afterwards makes default as to other of the payments, the seller in accordance with ·the terms of the mortgage, may legally take possession of the mortgaged property without complying with the provisions of sec. 2 of the act passed May 4, 1895, by tendering to the purchaser the sum or sums of money so paid after deducting· therefrom a reasonable compensation for the use of such property, which shall in no case exceed fifty per cent. of the amount so paid; that is, whether a transaction of this kind, when a mortgage is given, comes within the letter or spirit of this law."

Then he goes on and says that as he understands it, the supreme court affirmed the decision of the circuit court of Jefferson county in Caldwell v. The Singer Co., supra, upon the ground stated in the opinion.

Was the instrument under consideration by the circuit court of Hamilton county in Baker v. Speyer, supra, of such a character as to enable the vendor to re-take the property as his own without being obliged to account to anybody for it, or was such vendor under its provisions obliged to account, and, therefore, he could not take it as his own? A sale of personal property to be paid for in instalments, the title of which remains in the vendor until paid for, is, of course, within the provisions of the sales' act. "Makeshifts," schemes of the sort under consideration in Caldwell v. The Singer Co., supra, in pursuance of which a sale was made in one breath by the vendor to the vendee but in the very next breath back the title comes again to the vendor who never parted with it long enough to enable the vendee to fairly turn around, are, of course, mere evasions, and, therefore, they come clearly within the provisions of the act.

In this case the sale of the property preceded the giving of the mortgage and, therefore, the defendant became the absolute and unconditional owner of the property thus sold, and was such owner at the time of the execution and delivery of the mortgage. Hence, clearly, beyond even the shadow of a lingering doubt, the title did not remain in the vendor, that is, the plaintiff. The instrument under consideration very plainly shows upon its face that the sale of the chattels therein described, was not a conditional sale, but an absolute transfer of the title subject to the performance of the conditions ·set forth in the defeasance clause thereof.

Under the terms of the mortgage itself an unconditional liability was imposed on the defendant, Anna G. Manning, to pay the purchase price, and, therefore, the sale, from the very nature of things, was not conditional with a reservation of title in the vendor until the chattels sold by him to said vendee were paid for.

Optional payments are one of the essential elements of a conditional sale.

Construed in the light of what the courts has already said, it is impossible to regard the transaction between the parties in this case, as a conditional sale, because the defendant absolutely bound herself to pay the purchase price. By the execution and delivery of the promissory notes to the plaintiff her liability became fixed and definite. In the case at bar, at all times, the mortgageor had an insurable, leviable and attachable interest in the mortgaged property; but, on the other hand, if the instrument had been a mere conditional sale giving the seller of the property the right to retake it as his own at any time without obligating himself to account to anybody for the proceeds of the sale, and the title was at all times invested unconditionally in him, then could it be said that·there would be any such thing as a leviable, attachable or insurable interest in the property thus sold?

The crucial test for the purpose of determining whether an instrument is a mortgage or a conditional sale is this: Does the instrument enable the seller to re-take and absolutely own the chattels which the purchaser may have paid except, perhaps, a mere beggarly pittance?

If it does, then, in my opinion, it clearly falls within the provisions of the provisional sales' act, because it is wise and salutary legislation intended to choke and throttle dishonest commercial thimble-riggers who conceive and engineer crooked schemes of this sort to defraud and rob the poor and unsuspecting

But, on the other hand, if the provisions of the instrument are such that the mortgagee, the vendor, upon taking possession of the chattels for any cause is bound to account to the mortgageor for the value thereof, and after satisfying the mortgage indebtedness pay the balance, if any, to said mortgageor, the vendee, then such instrument is not a conditional sale within the purview of said at.

Now, therefore, with the law as our only guide, we are forced to hold:

1st. Where goods are sold on weekly or monthly payments and a chattel mortgage in the usual and ordinary form on such goods given to the seller, it does not come within the purview of section 4155-2 of the Revised Statutes of Ohio., known as the Conditional Sales' Act.

2nd. Under the provisions of the chat-

tel mortgage in the case at bar, the mortgagee had the right to take the property and sell it at public or private sale and apply the proceeds to the payment of his claim without first re-paying the mortgagee fifty per cent. or any other portion of the payments made on the goods thus taken and sold.

In spite of the fact that the instrument assai ed by the defendant in this case, is a mortgage in the usual and ordinary Ohio form, it is claimed that evidencee is admissible for the purpose of showing under the terms of a parol agreement made prior to or contemporaneously with the execution and delivery of said mortgage, that such mortgage squarely comes within the provisions of the Sales' Act. Is parol evidence on a prior or contemporaneous agreement admissible for this purpose? We think not.

I, therefore, hold that parol evidence is inadmissible for the purpose of contradicting, adding to, or varying the terms of a valid, written instrument, that is, the mortgage in this case. Whitney v. Powell, 33 Me., 318; Kunkle v. Wolfersberger, 6 Watts (Pa.), 130; Swan's Treatise (16 Ed.), Sec. 7, page 153 and cases cited; Farr v. Ricker, 46 Ohio St., 265; Cummings v. Kent, 44 Ohio St.; Painter v. Painter, 16 Ohio St., 473.

Hamilton, Hamilton & Smith, for plaintiff.

Judge E. J. Blandin and C. F. Morgan, for defendant.